UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **ERNEST KEVIN TRIVETTE and DISABILITY RIGHTS TENNESSEE,** ) ) ) | |
| **Plaintiffs,** ) ) | |
| **v.** ) ) | **Case No. 3:20-cv-00276** |
| ) | **Judge Aleta A. Trauger** |
| **TENNESSEE DEPARTMENT OF CORRECTION,** ) ) ) | |
| **Defendant.** ) ) | |

## MEMORANDUM AND ORDER

The Tennessee Department of Correction ("TDOC") has filed a Motion to Dismiss (Doc. No. 10), to which Ernest Kevin Trivette and Disability Rights Tennessee ("DRT") have filed a Response (Doc. No. 13), and TDOC has filed a Reply (Doc. No. 14). Trivette and DRT have filed a Motion for Leave to File First Amended Complaint (Doc. No. 18), to which TDOC has filed a Response (Doc. No. 20), and Trivette and DRT have filed a Reply (Doc. No. 21). For the reasons set out herein, TDOC's motion will be granted in part and denied in part and the plaintiffs' motion will be granted.

## I. BACKGROUND[1]

Trivette is a Deaf adult whose primary language is American Sign Language ("ASL").[2] From June 2015 to April 2, 2019, he was in the custody of TDOC. (Doc. No. 1 ¶¶ 1–2.) While in

---

[1] Except where otherwise indicated, the facts herein are taken from the Complaint (Doc. No. 1) and are taken as true for the purposes of the Motion to Dismiss.

[2] Trivette identifies as Deaf (with a capital 'D') to reflect the fact that he, in addition to having a hearing-related disability, participates in and identifies as a part of Deaf culture. (Doc. No. 1 at 2 n.2.) Because Trivette and DRT are complaining about a lack of accommodations that could benefit both capital-D Deaf

TDOC custody, Trivette "regularly requested that TDOC provide qualified sign language interpreters to him when necessary to ensure effective communication." (*Id.* ¶ 4.) TDOC, however, rarely complied with his requests; rather, TDOC typically relied on spoken English, written notes, or translation by a fellow inmate with limited ASL capabilities in order to communicate with Trivette. (*Id.*) Situations in which Trivette alleges he would have benefited from, but was denied, a competent ASL interpreter include facility orientation, case management meetings, medical and dental appointments, the explanation of prison rules and grievance procedures, and participation in a cognitive behavioral intervention program required for parole release. (*Id.* ¶¶ 37–42, 49–55, 58–56, 67.) Trivette was also unable to participate in TDOC's GED program, because TDOC would not provide an interpreter. (*Id.* ¶¶ 44–48.)

Trivette requires specialized telecommunication equipment in order to converse with others over the phone. He requested that equipment from TDOC in order to be able to communicate with his mother and others. TDOC, however, did not provide the specialized equipment until approximately Fall of 2018. Even after TDOC provided the equipment, however, the agency did not make adequate efforts to ensure that the equipment was maintained and in working order. TDOC also imposed more stringent rules on the use of the specialized equipment than it imposed on the use of telephones by hearing inmates. (*Id.* ¶ 5.)

DRT is a nonprofit corporation that advocates on behalf of Tennesseans with disabilities. In recent years, DRT has advocated for TDOC to better accommodate the needs of deaf and hard of hearing prisoners. (*Id.* ¶¶ 7–9, 20.) DRT complains that, despite its efforts and its expenditure of significant resources to influence TDOC, "TDOC continues to fail to provide effective

---

prisoners like Trivette and lowercase-d deaf prisoners who do not identify as part of Deaf culture, the court will generally use the lowercase throughout this opinion, except when specifically identifying an individual as Deaf.

2

communication to deaf and hard of hearing inmates and continues to be in violation of federal laws." (*Id.* ¶ 9.)

According to the Complaint, "DRT is part of the nationwide Protection and Advocacy ('P&A') system which is mandated by Congress to protect and advocate for the rights of people with disabilities in the United States." (*Id.* ¶ 123.) The P&A system is part of a multi-pronged, federally supported effort to ensure that disabled individuals "participate in the design of and have access to needed community services, individualized supports, and other forms of assistance that promote self-determination, independence, productivity, and integration and inclusion in all facets of community life, through culturally competent programs " 42 U.S.C. § 15001(b). In order for a state's P&A system to qualify for federal funds, it must have certain powers, including the power to "pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of such individuals within the State who are or who may be eligible for treatment, services, or habilitation, or who are being considered for a change in living arrangements, with particular attention to members of ethnic and racial minority groups." 42 U.S.C. § 15043(a)(2)(A)(i); *see also* 29 U.S.C. § 794e(f) (extending power-to-sue requirement to additional P&A duties); 42 U.S.C. § 300d-53(k) (same); 42 U.S.C. § 10805(a)(1)(B) (same).

On March 31, 2020, Trivette and DRT filed a Complaint pleading claims under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504"). (Doc. No. 1 ¶¶ 145–67.) On May 7, 2020, TDOC filed a Motion to Dismiss, arguing that Trivette's claims for damages are time-barred and that he lacks standing to pursue claims for declaratory or injunctive relief. (Doc. No. 10.) In the plaintiffs' response, Trivette concedes that he does not have standing to seek injunctive relief in that he is now on parole and that the court therefore should dismiss that portion of his claims. (Doc. No. 13 at 2.) On July 13, 2020, the

3

plaintiffs filed a Motion for Leave to File First Amended Complaint. (Doc. No. 18.) They seek to add two additional individual plaintiffs, Alex Gordon Stinnett and Jason Andrew Collins. Stinnett and Collins are Deaf prisoners currently in TDOC custody. They complain of the same general type of failures cited by Trivette in the original Complaint regarding a lack of competent interpreter services and restrictive access to telecommunications equipment. (Doc. No. 18-1 ¶¶ 7–18.)

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

"Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Genetek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). When a Rule 12(b)(1) motion contests jurisdiction factually, the court must weigh the evidence in order to determine whether it has the power to hear the case, without presuming the challenged allegations in the complaint to be true. *Id.*; *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). When the facts are disputed in this way, "[t]he district court has broad discretion to consider affidavits, documents outside the complaint, and to even conduct a limited evidentiary hearing if necessary," without converting the motion into one for summary judgment. *Cooley v. United States*, 791 F. Supp. 1294, 1298 (E.D. Tenn. 1992), *aff'd sub nom. Myers v. United States*, 17 F.3d 890 (6th Cir. 1994); *see also Genetek*, 491 F.3d at 330. It is then the plaintiff's burden to show that jurisdiction is appropriate. *DLX*, 381 F.3d at 511.

However, if a Rule 12(b)(1) motion challenges subject matter jurisdiction based on the face of the complaint, as this one does, the plaintiff's burden is "not onerous." *Musson Theatrical Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6t Cir. 1996). A court evaluating this sort of facial attack to the assertion of subject matter jurisdiction must consider the allegations of fact in the

complaint to be true and evaluate jurisdiction accordingly. *Genetek*, 491 F.3d at 330; *Jones v. City of Lakeland*, 175 F.3d 410, 413 (6th Cir. 1999).

## **B. Rule 12(b)(6)**[3]

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

---

[3] TDOC does not characterize its Motion to Dismiss as arising under Rule 12(b)(6), but rather only under Rule 12(b)(1). (Doc. No. 10.) TDOC's arguments challenging plaintiffs' Article III standing are indeed properly raised pursuant to Rule 12(b)(1). Compliance with the statute of limitations, however, "do[es] not constitute a jurisdictional prerequisite." *Williams v. Nw. Airlines, Inc.*, 53 F. App'x 350, 352 (6th Cir. 2002). It is, rather, an affirmative defense, *see* Fed. R. Civ. P. 8(c)(1), and is no more related to the court's jurisdiction than any other substantive basis for a claim's failing on the merits. TDOC's argument in this regard will therefore be considered under Rule 12(b)(6), not Rule 12(b)(1).

5

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

## C. Rule 15(a)(2)

Rule 15(a)(2) of the Federal Rules of Civil Procedure states that leave to amend should be freely given "when justice so requires." In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005) (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)).

## III. ANALYSIS

### A. Timeliness of Trivette's Claims for Damages

"The ADA has no statute of limitations" in its text. *Williams v. Trevecca Nazarene Coll.*, 162 F.3d 1162 (Table), 1998 WL 553029, at *1 n.2 (6th Cir. Aug. 17, 1998). The Supreme Court has "generally concluded that," when a federal statute has no express statute of limitations, "Congress intended that the courts apply the most closely analogous statute of limitations under state law." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158 (1983). The Sixth Circuit, applying that rule, has held that ADA claims in Tennessee are governed by the state's one-year statute of limitations for personal injury actions. *Straser v. City of Athens, Tenn.*, 951 F.3d 424, 427 (6th Cir. 2020) (citing Tenn. Code Ann. § 28-3-104(a)(1)(B); *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 547 (6th Cir. 2000)). The same is true for Section 504 claims. *I.L. ex rel. Taylor v. Knox*

*Cty. Bd. of Educ.*, 257 F. Supp. 3d 946, 964 (E.D. Tenn. 2017) (citing *Williams*, 1998 WL 553029, at *1 n.2).

TDOC argues that Trivette's claims are time-barred because he was released from TDOC on April 2, 2019 and did not file his Complaint until March 31, 2020—meaning that nearly all of his time in TDOC custody took place outside the statute of limitations. Trivette responds that TDOC's violations of his rights constituted a continuing violation and, therefore, his claims should be treated as timely as long as a portion of the deprivation took place before the statute ran.

"[T]he continuing violation doctrine does not allow recovery for discrete acts of discrimination outside the filing period." *Mayers v. Campbell*, 87 F. App'x 467, 470 (6th Cir. 2003) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). Rather, it allows a plaintiff to recover for cumulative acts of discrimination—some of which occurred within the filing period and some of which did not—in two discrete situations: first, where the plaintiff seeks to recover for a "series of discriminatory actions" that, taken together, constitute the actionable discrimination; and, second, where he seeks to recover for an "ongoing discriminatory policy or environment" that "results in an allegedly discriminatory act within the limitations period." *Straser*, 951 F.3d at 427 (citing *Dixon v. Anderson*, 928 F.2d 212, 216–18 (6th Cir. 1991)). Trivette argues that his allegations satisfy either of those tests; TDOC argues that they satisfy neither.

The general rule is that "[s]tatute-of-limitations defenses are [more] properly raised in Rule 56 motions [for summary judgment], rather than Rule 12(b)(6) . . . motions, because '[a] plaintiff generally need not plead the lack of affirmative defenses to state a valid claim.'" *Munson Hardisty, LLC v. Legacy Pointe Apartments, LLC*, 359 F. Supp. 3d 546, 567 (E.D. Tenn. 2019) (quoting *Paulin v. Kroger Ltd. P'ship I*, No. 3:14-cv-669, 2015 WL 1298583, at *4 (W.D. Ky. Mar. 23, 2015)). However, if it is "'apparent from the face of the complaint that the time limit for bringing

7

the claim[s] has passed,'" then the plaintiff, if he wishes to avoid dismissal, has an "obligation to plead facts in avoidance of the statute of limitations defense." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (quoting *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992)). When "the allegations in the complaint affirmatively show that a claim is time-barred," then "dismissing the claim under Rule 12(b)(6) is appropriate." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012).

The fact-intensive nature of Trivette's continuing violation theory renders this case a poor candidate for resolution of the issue of timeliness on a motion to dismiss. For example, it may, in fact, be the case that TDOC can show that Trivette can only identify discrete incidents of discrimination, unlinked by an ongoing policy, rendering all or nearly all of his potential claims time-barred. All the court can judge now, however, is what Trivette has alleged. Trivette claims that, during the relevant days at the end of his incarceration, he continued to be subject to ongoing, continuous policies that treated him in a discriminatory manner, such as TDOC's allowing unequal access to telephones. Of particular note, Trivette claims that he was deprived of a competent interpreter at a day-of-release case management meeting that fell within the statutory filing period. (Doc. No. 1 ¶ 60.g ; Doc. No. 13 at 8.) Further, he has alleged that these deprivations were part of an ongoing TDOC policy, not merely a series of discrete failures. What he has pleaded, then, is, at least potentially and plausibly, a continuing violation.

At this stage, Trivette had no obligation to establish the timeliness of his claims conclusively, as long as his Complaint, on its face, pleaded the claims otherwise sufficiently and did not leave their untimeliness beyond reasonable dispute. He has passed that bar. The court, therefore, will not dismiss his claims as untimely at this juncture.

**B. DRT's Standing**

TDOC argues next that DRT lacks standing to bring claims under the ADA or Section 504 based on TDOC's alleged treatment of Trivette or other Tennessee inmates. DRT argues that it is merely bringing a cause of action on behalf of its constituents, consistently with the well-established practice of advocacy organizations' possessing associational standing to vindicate the rights of their members. In the alternative, DRT argues that it has standing in its own right, given the expenditures it has had to make to investigate and address TDOC's actions.

Article III of the Constitution gives the federal courts jurisdiction only over "cases and controversies," of which the component of standing is an "essential and unchanging part." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing under the Constitution, a plaintiff must show that: (1) it has suffered an "injury in fact" that is (a)(i) concrete and (ii) particularized; and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested. *Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 579–80 (6th Cir. 2014) (citing *Lujan*, 504 U.S. at 560–61); *see also Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). These mandatory minimum constitutional requirements—commonly known as (1) injury-in-fact, (2) causation, and (3) redressability—apply in every case.

The courts have recognized that, in some situations, an organization can bring suit based on injuries suffered by its individual members. Specifically, "[a]n association has standing to bring suit on behalf of its members when [1] its members would otherwise have standing to sue in their own right, [2] the interests at stake are germane to the organization's purpose, and [3] neither the claim [brought] nor the relief requested requires the participation of individual members in the

9

lawsuit."[4] *Waskul v. Washtenaw Cty. Cmty. Mental Health*, 900 F.3d 250, 254–55 (6th Cir. 2018) (quoting *Friends of the Earth*, 528 U.S. at 181). DRT argues that it has standing on behalf of "its constituents and clients who are substantially affected by [TDOC's] noncompliance with constitutional and statutory protections because such noncompliance falls within DRT's general scope of interest and activity." (Doc. No. 13 at 5.)

As an organization within the congressionally authorized P&A system, DRT is specifically empowered to "pursue legal . . . remedies or approaches to ensure the protection of" disabled individuals in Tennessee. 42 U.S.C. § 15043(a)(2)(A)(i). Of course, "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997)). DRT's statutory powers through the P&A system, however, are relevant to the question of associational standing, because the P&A system creates the basic structure for the relationship between DRT and the individuals on whose behalf it seeks to assert standing. DRT is not simply a conventional, wholly private advocacy organization, but rather part of a cooperative state-federal system that brings with it federal responsibilities and federal dollars.

In that regard, DRT's relationship to Trivette is not precisely analogous to the membership-based relationship that typically drives the associational standing analysis. TDOC, however, has not identified any basis, at least at this stage, for doubting that the relationship between a P&A

---

[4] TDOC attempts to impose an additional requirement for the invocation of associational standing: that the individual plaintiff or plaintiffs whose rights are at issue face a hindrance with regard to asserting their own rights. That requirement, however, typically applies in cases involving types of third-party standing other than conventional associational standing. *See, e.g.*, *Kowalski v. Tesmer*, 543 U.S. 125, 125 (2004) (considering individual attorneys' standing to bring claims on behalf of potential clients). The court notes, however, that, insofar as the hindrance requirement would apply here, DRT would likely satisfy that requirement, at the pleading stage, because it has alleged that incarcerated prisoners with hearing disabilities are hindered in their ability to pursue the ordinary grievance process.

10

organization and its constituents is sufficiently analogous to membership to support associational standing. *See Doe v. Stincer*, 175 F.3d 879, 886 (11th Cir. 1999) (holding that P&A organization can assert associational standing on the same terms as membership-based organizations because its relationship with its constituents is "[m]uch like" the relationship of "members of a traditional association"). Indeed, the Supreme Court itself has made clear that associational standing need not be confined to formal conceptions of "membership," as long as the "indicia of membership" are present. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344 (1977); *accord Ball by Burba v. Kasich*, 244 F. Supp. 3d 662, 682 (S.D. Ohio 2017). TDOC does not identify any reason why the court should conclude that the indicia of membership are absent here, and both DRT's allegations and the statutory P&A structure support the conclusion that DRT is an organization that represents and is accountable to the state's disabled population in a manner akin to membership.[5]

Nor does TDOC identify any other basis for holding that DRT should fail the test for associational standing. Advocating for greater support for deaf and hard-of-hearing individuals in TDOC facilities is plainly consistent with DRT's mission, and, because DRT is challenging broad, policy-level failures by TDOC regarding its lack of language supports, DRT can pursue these

---

[5] The court acknowledges that the finding of associational standing here arguably puts this court at odds with an opinion by another judge of this court in a case involving the P&A system, *Tennessee Protection & Advocacy, Inc. v. Bd. of Educ. of Putnam Cty., Tennessee*, 24 F. Supp. 2d 808 (M.D. Tenn. 1998) (Wiseman, S.J.). The reasoning of that case, however, focused largely on the plaintiff's failure to identify "named individuals with specific injuries," *id.* at 812, which is not an obstacle here.

11

claims without the direct participation of each individual affected.[6] The court accordingly will not dismiss its claims based on its lack of standing.[7]

**C. Motion to Amend**

TDOC argues that the court should deny the plaintiffs' Motion to Amend because joinder would be improper between Trivette's claims and the new putative plaintiffs' claims. Rule 20(a)(1) of the Federal Rules of Civil Procedure permits joinder of plaintiffs if "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." "This accords with the general principle under the Federal Rules of Civil Procedure to allow 'the broadest possible scope of action consistent with fairness to the parties.'" *Bridgeport Music, Inc. v. 11C Music*, 202 F.R.D. 229, 231 (M.D. Tenn. 2001) (Campbell, J.) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)). TDOC argues that, although all the potential plaintiffs allege they have been harmed by its failure to provide sufficient language supports, each prisoner's case involves distinct instances of alleged discrimination, implicating different time periods, personnel, and TDOC facilities.

---

[6] This third aspect of the associational standing inquiry has been referred to by the Supreme Court as prudential, not constitutional, in nature. *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996). As such, the requirements arguably should not apply to a P&A organization at all, since (1) the Supreme Court has recognized that "prudential standing" is fundamentally an issue of statutory construction, see *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127–2 9 (2014), and (2) Congress has statutorily granted P&A organizations power to sue to protect their constituents. In any event, DRT can satisfy the requirement regardless.

[7] Because DRT has associational standing, the court has no need to determine whether it can assert standing directly based on its own injuries—that is, based on its expenditure of resources to address TDOC's policies. The court notes that, although an injury to the resources of an advocacy organization can sometimes form a sufficient injury to support direct standing, the Sixth Circuit has expressed skepticism about an organization's ability to "spend its way into standing based on speculative fears of future harm." *Memphis A. Philip Randolph Inst. v. Hargett*, No. 20-6046, 2020 WL 6074331, at *7 (6th Cir. Oct. 15, 2020). On the other hand, however, the court also notes that that skepticism is typically applied to wholly independent advocacy organizations, not organizations with a federal statutory duty to investigate and ameliorate harms.

12

"In the Sixth Circuit, '[t]he words 'transaction or occurrence' are given a broad and liberal interpretation in order to avoid a multiplicity of suits.'" *Shaffer v. Donoghue*, No. 3:17-CV-571-RGJ, 2019 WL 321422, at *3 (W.D. Ky. Jan. 24, 2019) (quoting *LASA Per L'Industria Del Marmo Societa Per Azoini of Lasa, It. v. Alexander*, 414 F.2d 143, 147 (6th Cir. 1969)). The court's inquiry should focus not on mechanically discerning whether the parties' claims arise wholly from the same specific, discrete event, but on the "similarity in the factual background of the claim[s]." *Proctor v. Applegate*, 661 F. Supp. 2d 743, 779 (E.D. Mich. 2009) (quoting *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997)). The plaintiffs point out that, although each plaintiff or potential plaintiff has experienced his own unique path through TDOC and his own unique instances of alleged discrimination, each claim hinges on the same essential factual background: that TDOC has failed to adopt policies providing adequate translators and other language supports for deaf prisoners in its custody, including at key moments involving the prisoners' rights and well-being.

It is true that the specific details of the individual defendants' cases will differ. That, though, would be the case in virtually any multi-plaintiff case challenging a discriminatory policy. The courts, however, have routinely recognized that multi-plaintiff discrimination cases are, at least sometimes, permissible. *See Ivery v. Gen. Die Casters, Inc.*, No. 5:17-CV-37, 2017 WL 6270239, at *4 (N.D. Ohio Dec. 8, 2017) (collecting cases). The plaintiffs, moreover, are the "master[s] of the complaint," *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987), and they have chosen to define their claims in light of TDOC's systemic, policy-level failings regarding its treatment of deaf and hard-of-hearing prisoners, rather than simply the particular minutiae of any individual plaintiff's claims. Indeed, if anything, the fact that the same type of deprivation is alleged to have occurred across multiple facilities and settings supports an inference that the

13

plaintiffs are challenging a shared, deeper problem that they can effectively ligate together. The court therefore will permit the amendment of the Complaint and the addition of the new individual plaintiffs.

## IV. CONCLUSION

For the foregoing reasons, TDOC's Motion to Dismiss (Doc. No. 10) is hereby **GRANTED** in part and **DENIED** in part, and the plaintiffs' Motion for Leave to File First Amended Complaint (Doc. No. 18) is hereby **GRANTED**. Trivette's claims for injunctive and declaratory relief are hereby **DISMISSED**. In accordance with the court's Order of October 21, 2020 (Doc. No. 27), TDOC is hereby **ORDERED** to file a Response to the plaintiffs' Motion for Preliminary Injunction (Doc. No. 22) within 14 days.

It is so **ORDERED**.

　　　　　　　　　　　　　　　　　　　　　　　ALETA A. TRAUGER
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

14

Case 3:20-cv-00276   Document 29   Filed 11/12/20   Page 14 of 14 PageID #: 482